IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>AARON YOUNG,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>CIVIL NO.: WDQ-08-1912</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>HOSSAM ANTAR and</td><td></td><td></td></tr>
<tr><td>CRUISE MANAGEMENT</td><td>*</td><td></td></tr>
<tr><td>INTERNATIONAL, LLC,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Aaron Young sued Hossam Antar and Cruise Management International, LLC ("CMI") for fraud, breach of contract, and other claims. For the following reasons, Antar's motion for summary judgment will be granted in part and denied in part.

I.   Background[1]

Aaron Young is an art dealer and investor who lives in Maryland. Aaron Young Dep. 7:10-12:19, Sept. 25, 2009. Hossam Antar, a Florida resident, owns several art-related businesses, including a publishing firm, a gallery, and a business that

---

[1] For the pending motion, Young's "evidence is to be believed, and all justifiable inferences are . . . drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

holds art auctions on cruise ships.  Hossam Antar Dep. 39:14-56:20, February 19, 2009.  Antar is also the managing member of CMI, a Delaware limited liability company that administers a credit card "affinity program" through which persons using CMI credit cards earn "points" that may be exchanged for discounts on cruise tickets.  *See id*. at 52:19-53:12.

In mid-2006, Antar came to Baltimore to buy artwork from one of Young's businesses.  Young Aff. ¶ 4, Sept. 26, 2008 [hereinafter "1st Young Aff."].  Antar told Young that he was seeking to raise capital for CMI and asked Young if he would consider investing.  *Id*. ¶ 5.  Several months later, Young invited Antar to Baltimore to make a more formal "pitch" of CMI to Young and several other investors.  *Id*. ¶ 9.  After a dinner at which Antar presented his ideas for CMI, Young agreed to begin negotiations with Antar to become a member.  *Id*. ¶ 10.

On July 26, 2006, Antar offered Young a 50 percent stake in CMI for $400,000.  Mot. Summ. J., Ex. 18.  Explaining that "time [was] of the essence," Antar requested $100,000 by July 28, 2006 and another $100,000 by August 4, 2006.  *Id*.  The remaining $200,000 was to be paid "upon the execution of a mutually agreeable company operating agreement."  *Id*.  Later that day, Antar emailed Young a Memorandum of Understanding ("MOU") that was to govern Young's investment until the operating agreement

2

was signed. *Id.*, Ex. 1. Young refused to sign the MOU because it did not contain certain provisions he considered essential.[2] Young Dep. 69:4-75:10. Antar suggested that, in the interest of time, rather than redraft the MOU, he would produce an operating agreement that met Young's requirements. *Id.* 75:4-10; Aaron Young Aff. ¶ 3, Jan. 19, 2010 [hereinafter "2d Young Aff."]. In the meantime, Antar asked Young to provide the initial $200,000 investment and told Young that he would be personally responsible for repaying the investment if they could not reach an agreement. 2d Young Aff. ¶ 3. Antar promised Young that he would draft an operating agreement that would contain the provisions of the MOU and the additional terms Young requested. Young Dep. 82:2-11; Young Answers to Interrog. No. 4, Sept. 25, 2009. Relying on this promise, Young wired $100,000 to a CMI bank account on July 31, 2006. *Id.*; Opp., Ex. 5. He wired another $100,000 on August 9, 2006. Opp., Ex. 7. In an August 9, 2006 email confirming receipt of the second wire, Antar promised that he would provide a draft operating agreement within a week. *Id.*

On August 27, 2006, Antar emailed Young a draft operating agreement. Opp., Ex. 8. Young forwarded the agreement and the

---

[2] Young objected to the lack of choice of forum, merger and severability clauses, among other things. Young Dep. 69:20-74:14.

MOU to his attorney, whom he asked to determine whether the
operating agreement "reflected the spirit of the MOU with all
the necessary changes." Young Dep. 88:13-18; 103:4-18. Young's
attorney responded that the agreement did not reflect the MOU.
*Id.* 90:3-9. On September 20, 2006, Young emailed Antar a
proposed operating agreement that had been prepared by his
attorney. Opp., Ex. 9. Antar failed to respond, and Young sent
a follow-up email on September 25, 2006, asking if Antar had
comments on the proposal. *Id.*, Ex. 12. That day, Antar emailed
Young several objections: (1) the "deadlock clause" in Young's
proposed agreement did not reflect the MOU;[3] (2) the president's
authority under Young's agreement was "drastically" different
from the authority under Antar's; and (3) the limitations in
Young's agreement on selling a membership interest were
unsatisfactory. *Id.* Young responded later the same day that

_____

[3] Under the MOU's deadlock clause, only Young could trigger a
buyout: "[i]n case of a future deadlock[,] a buy out clause can
only be triggered by the Aaron Young Investment Group, allowing
the West End Group to buy the equity of the Aaron Young Group .
. . The buy out clause can never be triggered to allow the Aaron
Young Investment Group to buy the West End Group." Opp., Ex. 1.

Under Antar's proposed Operating Agreement, Antar could
trigger a buyout: "[i]n the event that the Members shall be
unable to agree on issues of general management and control of
the LLC, then in order to prevent such disagreement from
resulting in the deadlock of the operations of the LLC, the
Members agree that the Antar Group . . . shall have the right to
give [Young] a written notice . . . of its intention to buy all
of the [Young's interest in CMI][.]"

4

(1) his proposed agreement reflected the MOU's deadlock clause, (2) he had told Antar that the president's authority was too broad under Antar's proposed agreement, and that (3) he did not understand Antar's objections to the limitations on selling membership interests. *Id*.

Negotiations stalled. Young Dep. 91:2-9. Young testified that "[Antar] more or less went dark. You couldn't really get him, always an excuse, couldn't really get to it, had his daughter's ballet class; the lawyer [was ill]. Whatever it was, there was a just a long chain of reasons why we just couldn't focus on [Young's proposed agreement]." *Id*. Young began to suspect that Antar did not intend to finalize an operating agreement. Young Dep. 91:18-22. Although the two men continued to discuss CMI, no further progress on the agreement was made, and after a final meeting in December 2006, Young asked Antar to return the $200,000. *Id*. 119:14-121:22. Antar refused, and began avoiding Young's calls. *Id*. Young continued his efforts to get the money back in 2007 and 2008, but was unsuccessful. *Id*. 157:1-22.

On July 23, 2008, Young sued Antar for unjust enrichment and constructive fraud. Paper No. 1. Young amended his complaint on September 26, 2008, adding CMI as a defendant, and promissory estoppel and breach of contract claims. Paper No.

10.  On February 26, 2009, he filed a second amended complaint,

adding a claim for fraud.  Paper No. 27.  On November 16, 2009,

Antar moved for summary judgment.  Paper No. 38.

II.  Analysis

    A.  Standard of Review

Under Rule 56(c), summary judgment "should be rendered if

the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine dispute as to

any material fact and that the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(c).  In considering a

motion for summary judgment, "the judge's function is not . . .

to weigh the evidence and determine the truth of the matter but

to determine whether there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  A

dispute about a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the

nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most

favorable to . . . the nonmovant, and draw all reasonable

inferences in h[is] favor," *Dennis v. Columbia Colleton Med.*

*Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002), but the Court

also "must abide by the affirmative obligation of the trial

judge to prevent factually unsupported claims and defenses from

proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B. Fraud

Fraud requires a (1) false representation (2) made with knowledge of its falsity, or in reckless disregard of the truth (3) with the intent to defraud, (4) justifiable reliance by the plaintiff, and (5) damages caused by the fraudulent statement. *Miller v. Fairchild Indus.*, 97 Md. App. 324, 629 A.2d 1293, 1302 (Md. Ct. Spec. App. 1993). Generally, "predictions or statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud." *Id*. at 1302. However, a "promissory or predictive statement[] . . . made with the present intention not to perform" is actionable. *See id*. Fraud must be proved by clear and convincing evidence. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276, 285 (Md. 2005).

Antar argues that Young's loss of the $200,000 was not because of fraud, but was merely the result of the parties' failed attempts to reach a final operating agreement. Young counters that Antar misrepresented his willingness to produce an operating agreement that was consistent with the MOU and contained the additional terms Young demanded. Young's theory is that Antar did not intend to follow through with the

7

negotiations, but needed Young's investment and thus falsely represented his intention to produce an acceptable operating agreement. Young also argues that he justifiably relied on Antar's promise to produce an acceptable operating agreement in giving Antar the $200,000. The two had done business before, and Antar had seemed willing to engage in good faith negotiations regarding Young's acquisition of an interest in CMI.

Young cites the following as evidence of fraud: (1) Antar's proposed operating agreement of August 27, 2006 did not contain the terms from the MOU that Antar and Young had agreed should be in the operating agreement; (2) Young's September 20, 2006 proposed agreement contained the agreed-upon terms; (3) Antar objected that the deadlock clause in Young's proposed agreement did not match that of the MOU, when it did; (4) after Young pointed this out, Antar stopped negotiating; and (5) Antar refused to return the $200,000. Young asks the Court to conclude that Antar's recalcitrance about certain terms in Young's proposed operating agreement was a ruse, and his intention was to bilk Young out of the $200,000.[4] This evidence

---

[4] *Cf. Paramount Brokers, Inc. v. Digital River, Inc.*, 126 F. Supp. 2d 939, 946 (D. Md. 2000)("Plaintiff is here seeking to prove fraud inferentially by asserting that defendant's statements . . . were never realized and that they therefore must have constituted fraud. Proof of this sort does not amount to clear and convincing evidence of knowingly fraudulent

would not support a jury verdict for Young, especially given the

heightened burden of proof required for fraud.[5]  Accordingly,

Antar's motion for summary judgment on Young's fraud claim will

be granted.

C.  Constructive Fraud

Constructive fraud is:

> [A] breach of a legal or equitable duty which,
> irrespective of the moral guilt of the fraud feasor,
> the law declares fraudulent because of its tendency to
> deceive others, to violate public or private
> confidence or to injure public interests.  Neither
> actual dishonesty nor intent to deceive is an
> essential element of constructive fraud.

*Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 652 A.2d 1117,

1127 n.11 (Md. 1995).[6]  Constructive fraud "usually arises from a

breach of duty whe[n] a relationship of trust and confidence

exists."  *Crawford v. Mindel*, 57 Md. App. 111, 469 A.2d 454, 459

(Md. Ct. Spec. App. 1984).  "Whe[n] . . . a party is justified

in believing that the other party will not act in a manner

---

misrepresentations or of misrepresentations made with reckless
indifference as to their truth.").

[5] On summary judgment, the non-movant's evidence is viewed in
light of the burden of persuasion that will apply at trial.  *See
Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

[6] "In equity, fraud 'includes all acts, omissions, and
concealments which involve a breach of legal or equitable duty,
trust, or confidence, justly reposed, and are injurious to
another, or by which an undue and unconscientious advantage is
taken of another.'" *Alleco v. Harry & Jeanette Weinberg Found.*,
340 Md. 176, 665 A.2d 1038, 1049 n.6 (Md. 1995) (*quoting* 1
Story, *Equity Jurisprudence* § 263 (14th ed. 1918)).

adverse or inconsistent with the reposing party's interest or welfare, constructive fraud may be found to arise from a violation of this belief." *Id*. Constructive fraud must be proved by clear and convincing evidence. *Jeffcoat v. Jeffcoat*, 102 Md. App. 301, 649 A.2d 1137, 1139 (Md. Ct. Spec. App. 1994).

Antar argues that Young has not shown the type of relationship that supports recovery for constructive fraud. Young argues that he had a "confidential relationship" with Antar, which Antar abused by fraudulently inducing him to loan the $200,000.

"[A] confidential relationship exists whe[n] one party has dominion over the other person, and the relationship is such that the person with greater influence is expected to act in the best interest of the other person." *Brass Metal Prods. V. E-J Enters.*, 189 Md. App. 310, 984 A.2d 361, 356 (Md. Ct. Spec. App. 2009). "Confidential relationships can be found in attorney-client relationships, trustee-beneficiary relationships, and in some family relationships." *Id*.

"Generally, business relationships are not confidential relationships." *Id*. at 357. For a business relationship to be a confidential relationship, "[c]ertain factors above and beyond

a typical business relationship must exist." *Id*.[7] For example,
a confidential relationship may exist when the parties have a
close personal relationship that precedes the business
relationship. *See id.* (*citing Gilmore v. Bell*, 478 S.E.2d 609,
611 (Ga. Ct. App. 1996)). Also, a confidential relationship may
exist in a business relationship if "confidences are reposed by
one person in another, who as a result gains an influence and
superiority over him." *Id.* at 357-58.

Young argues that had a confidential relationship with
Antar because the two "contemplated a . . . relationship akin to
a partnership." Opp. 17. He cites Antar's July 31, 2006 email
that concludes with the statement "I look forward to a very
successful and rewarding partnership with your group." Opp.,
Ex. 5. Relying on case law discussing the fiduciary duties
applicable to partners, *see Meinhard v. Salmon*, 164 N.E. 545,
546 (N.Y. 1928), Young contends that Antar owed him such a duty.
Although the parties may have "contemplated" a closer
relationship, Young has not shown that such a relationship
existed when he sent Antar the $200,000. The mere contempla-
tion of a relationship beyond a business relationship is not

---

[7] "The fact that one businessman trusts another and relies on
another to perform a contract does not give rise to a
confidential relationship, because something apart from the
transaction between the parties is required." *Id.* (*quoting
Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 443 (Tex. Ct.
App. 2002)).

sufficient to show the duty required for constructive fraud. Accordingly, Antar's motion for summary judgment will be granted on this claim.

D. Unjust Enrichment

Unjust enrichment requires (1) a benefit conferred on the defendant by the plaintiff, (2) a defendant's appreciation or knowledge of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 936 A.2d 343, 351 (2007).

Antar argues that Young cannot show the first element because the undisputed evidence is that Young wired the $200,000 to a CMI bank account, and there is no evidence that Antar has removed the money from the account. Young concedes that he sent the money to a CMI account, but argues that it is not dispositive because Antar had assured him that until an operating agreement was finalized he would be dealing with Antar personally. Young appears to argue that Antar's assurances of the personal nature of their relationship meant that the $200,000 was a loan to Antar, not to CMI. Antar counters that, at best, he promised to guarantee the loan to CMI and that his promise would be unenforceable under the statute of frauds because it

12

was not in writing. The nature of the parties' relationship is a factual dispute to be resolved at trial. Young's evidence would permit a jury to find that the $200,000 was a personal loan to Antar, and it was inequitable for Antar to keep it after the parties had failed to finalize an operating agreement. Accordingly, Antar's motion for summary judgment on Young's unjust enrichment claim will be denied.

### E. Promissory Estoppel and Breach of Contract

Antar seeks summary judgment on Young's promissory estoppel and breach of contract claims based on the statute of frauds. Antar argues that, at best, his agreement with Young about the $200,000 was a guarantee of Young's loan to CMI--*i.e.*, Antar promised to repay Young only if CMI failed to perform--which is enforceable only if evidenced by a signed writing.[8] Because Young has produced no writing, Antar argues that he is entitled to summary judgment.

---

[8] Under the Maryland statute of frauds:

> Unless a contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party, an action may not be brought:
>
> (1) To charge a defendant on any special promise to answer for the debt, default, or miscarriage of another person[.]

Md. Code. Ann., Cts. & Jud. Proc. § 5-901.

The statute of frauds does not apply to a promissory estoppel claim. *See, e.g.*, *Pavel Enters. v. A.S. Johnson Co.*, 342 Md. 143, 674 A.2d 521, 532 n.28 (Md. 1996). Further, Young has produced evidence that Antar promised to draft an acceptable operating agreement to induce Young to wire the $200,000, and Young reasonably relied on that promise. *See id*. (listing elements of promissory estoppel). A reasonable jury could conclude that Antar's promise should be enforced. Accordingly, Antar's motion for summary judgment on Young's promissory estoppel claim will be denied.

Antar's statute of frauds argument regarding Young's con- tract claim fails because it assumes that Young's agreement was with CMI rather than Antar. But Young has sufficient evidence sufficient to create an issue of fact whether he dealt with Antar individually; Young has testified that Antar told him that until the operating agreement Young would be dealing with Antar personally. 2d Young Aff. ¶ 3. Summary judgment on Young's breach of contract claim is thus inappropriate.

F. Piercing the Corporate Veil

Young pled "piercing the corporate veil" as a separate count in his complaint. "Piercing the corporate veil" is not a

14

claim,[9] but a theory of recovery under which an individual defendant may be subject to the liabilities incurred by a corporation or LLC. *See Allen v. Dackman*, 2010 Md. LEXIS 82, at (Md. Mar. 22, 2010). Young appears to argue that even if it is determined that he was dealing with CMI, Antar should not have the limited liability that usually extends to LLC members.

"Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil." *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 728 A.2d 783, 789 (Md. Ct. Spec. App. 1999).[10] Relying on authority that courts may pierce the corporate veil to enforce a "paramount equity," Young contends that the "enforcement of a paramount equity" is a claim--akin to fraud but not subject to a heightened evidentiary burden--that may be asserted against an individual if the plaintiff can demonstrate a basis for veil piercing (*e.g.*, the corporation was undercapitalized, failed to observe corporate formalities, or

---

[9] Fed. R. Civ. P. 56(c) permits "a party against whom relief is sought to move . . . for summary judgment on all or part of a claim." Although "piercing the corporate veil" is not a claim, the Court will consider Antar's motion under the summary judgment rule because Young pled it as a claim.

[10] *See, e.g.*, *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 340 A.2d 225, 233-36 (Md. 1975) (declining to pierce veil when three corporations commingled equipment, operated from single place of business, permitted one corporation to become dormant, and made personal loans and transferred insurance policies to principals).

was used as a shield to perpetrate fraud). *See Turner v. Turner*, 147 Md. App. 350, 809 A.2d 18, 62 (Md. Ct. Spec. App. 2002); *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc*., 126 Md. App. 294, 728 A.2d 783, 789 (Md. Ct. Spec. App. 1999).

The only support for veil piercing is Young's speculation about CMI's financial status and business dealings: that Antar (1) had told him that he commingled the funds of the businesses he owns, (2) "owed a lot of people money"; (3) "was constantly trying to get payment plans"; (4) "had IRS issues", and (5) "had payroll issues." Young Dep. 135:15-137:6. Young admitted that he has never seen CMI's books or had conversations with CMI's accountant. *Id*. 134:13-135:9. Antar has provided the affidavit of Edward Farrell, CMI's chief operating officer and bookkeeper, that CMI and Antar's other businesses maintain separate accounts and file separate tax returns. Edward Farrell Aff. ¶¶ 2-5, Nov. 13, 2009. Farrell also stated that although the entities make loans to each other, there is no commingling of assets among them; nor does Antar commingle his personal assets with those of CMI. *Id*. ¶ 5. Given the heightened showing required for veil piercing, *see, e.g.*, *Residential Warranty*, 728 A.2d 783 at 789, Young's evidence is insufficient. Accordingly, Antar's motion for summary judgment on that count will be granted.

III.  Conclusion

For the reasons stated above, Antar's motion for summary judgment will be granted in part and denied in part.


May 20, 2010                    _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge